## E. L. WARD v. STATE.

No. A-4424. Opinion Filed June 2, 1924.

(226 Pac. 113.)

(Syllabus.)

**Intoxicating Liquors—Unlawful Possession—Insufficient Evidence.** In a prosecution for unlawful possession of intoxicating liquor, evidence considered, and held insufficient to sustain verdict and judgment of conviction.

Appeal from County Court, Harmon County; E. C. Abernathy, Judge.

E. L. Ward was convicted of a violation of the prohibitory liquor law, and he appeals. Reversed.

Stewart & Williams, for plaintiff in error.

George F. Short, Atty. Gen., and J. Roy Orr, Asst. Atty. Gen., for the State.

DOYLE, J. Appellant, E. L. Ward, was convicted on a charge that he did have in his possession about four or five gallons of intoxicating liquor, to wit, grape wine, which contained more than one-half of 1 per cent. of alcohol, with the unlawful intent to sell the same, and his punishment fixed at 60 days in jail and a fine of $250. To reverse the judgment entered on the verdict he appeals.

On the day set for hearing an application for a postponement or continuance was presented and denied. Appellant's affidavit contained all the formal allegations required by law, and among others the following statements: That the only basis for the claim of the state is the fact that the defendant did have on hand some grape juice, intended for the use of his family; that such grape juice was prepared for the use of his wife and children, and if there was any alcohol in the same in the excess of one-half of 1 per cent. it was absolutely without the knowledge or consent of this de-

fendant; that defendant's wife, Nancy A. Ward, is the only person outside of the defendant who has full knowledge of all the facts and circumstances connected with said grape juice; that if present at the trial of this case she would testify that said grape juice was prepared for drinking purposes as a nonalcoholic beverage; that such grape juice was prepared from grapes during the grape season of 1921, and that at the time that the same was seized by the officers it had become sour and was left in the barrel for the purpose of making vinegar for the use of the defendant and his family; that he and his wife have five children living; that the two youngest are twins and babes in arms; that his wife has been very ill for the last 2 weeks, so much so that he had to do the house work; that he lives 18 miles from Hollis, and there have been heavy rains in Harmon county the past few days, and the roads are very heavy with mud; that his wife is in such a condition physically at this time that it would be injurious to her health to be present at this time; that one of their twin babies is sick, and it would be necessary to bring the babies in case his wife could come; that the defendant cannot safely proceed to trial at this time without the presence of his wife as a witness to testify to the above facts.

The evidence shows that on the 19th day of September, 1921, E. T. Smith, a deputy sheriff, and Chester Bilderback visited the premises of the defendant. Smith testifies:

"We went to the house and asked for Mr. Ward, and his wife said that he was in the field at work. I left Mr. Bilderback at the barn and went to the field to see Mr. Ward. I asked him what he was doing, and he said he had made a little grape wine, and it was in a barrel at the barn. We went to the barn and found about five gallons of what I call grape wine. I told him that I did not know whether it was intoxicating enough to be a violation of the law; but I would take a sample and turn it over to the county at-

torney, and let him know later whether we wanted him or not. So I took a sample in a quart fruit jar, and the next day I sent it to the county attorney by Sheriff Horton and Mr. Brisco, who were at Gould. I did not have a search warrant, but he made no objections."

B. B. Brisco, undersheriff, testified that Ed Smith delivered to him a fruit jar containing a beverage, saying that he had taken it from the defendant; that he brought the jar to Hollis, and the county attorney sent it to Oklahoma City through the mail to a chemist at the Wesley Laboratory.

Against the defendant's objection the deposition of Dr. L. B. Ritter was read, to the effect that he made an analysis of the liquid received through the United States mail from the county attorney of Harmon county, and that the same contained 7.97 per cent. grain alcohol by volume. When the state rested, the defendant demurred to the evidence, and moved that the court advise the jury to acquit him, on the ground that the same was insufficient to show the commission of a public offense.

The testimony of the defendant in his own behalf is as follows:

"When Mr. Smith and Mr. Bilderback came to my home, I was working in the field. I had 4 or 5 gallons of grape juice in a barrel in the barn, and it was made by putting two gallons of grape juice in about 20 gallons of water with some sugar."

That he did not use yeast or anything else to hasten fermentation. That his family used it on the table. That after it began to sour we decided to make vinegar out of what was left. That he never had any intention to sell, barter, or give away any of this liquid, and if it contained alcohol in excess of one-half of 1 per cent. he did not know it. That Mr. Smith took a half gallon jar of it, instead of a quart. That he made no objection to him doing this.

C. D. Hill testified that he had been acquainted with the defendant all his life, and knew his general reputation as to being an upright, law-abiding citizen in the community where he lives, and it was good; that he was at his home about the 1st of September, and drank three or four glasses of this grape juice, and it was not intoxicating.

W. D. Hill testified that he was not related to witness C. D. Hill; that as a neighbor he visited defendant's home several times, and often drank two or three glasses of this stuff, and it did not have any intoxicating effect.

Jim Madlock testified that he had known the defendant all his life, and knew his general reputation as to being an upright, law-abiding citizen in the community in which he lives, and it is good.

Sam West testified that he was minister in the Baptist Church for the past 16 years, and lived on the place adjoining that of the defendant, and knew his reputation as to being an upright, law-abiding citizen in that community, and it was good.

Some expert testimony was introduced to show that all fruit juices form alcohol when they ferment, and that vinegar is produced by acetous fermentation, which converts the alcohol into acetic acid.

The assignments of error argued in the briefs number 22. However, we deem it entirely unnecessary to consider more than one. It is insisted that there was not sufficient evidence to sustain the verdict. In the brief of counsel this contention is directed to the allegation of insufficiency of the proof that the liquid was intoxicating, and that there was no evidence of unlawful intent.

To warrant or sustain a conviction there must be evidence sufficient to prove that an offense has been committed,

and also to inculpate the defendant in its commission. It is a universal doctrine that, to constitute what the law deems an offense, there must concur both an evil act and an evil intent. When we recall the presumption that the law always indulges in as to the innocence of the accused, and the necessity of establishing guilt beyond a reasonable doubt, and consider the force and effect which in a case of this kind should have been given to evidence of previous good character, we think it would have been a proper exercise of the power vested in the trial court to have advised the acquittal of the defendant, upon the ground that the evidence was not sufficient to sustain a conviction.

In our opinion, it would be destroying the presumption which arises in favor of the innocence of the accused, and permitting the subversion of the rule which requires the establishment of guilt beyond a reasonable doubt, to allow this conviction to stand. An honorable upright life ought to be worth something to a man when accused of crime, evidence of good character should have its due weight in favor of the accused, and we think the defendant in this case was entitled to the benefit of it. In our opinion, the testimony on the part of the state as a matter of law must be held insufficient upon which to base a judgment of conviction.

The judgment of the lower court is accordingly reversed.

BESSEY, J., concurs.

MATSON, P. J., absent.